# EXHIBIT U
# TO
# YOON DECLARATION

(REDACTED)

## AMR WB Standard
## PATENT LICENSE AGREEMENT

THIS AGREEMENT is entered into this 31st day of December 2015 (the "Effective Date"), by and between **SAINT LAWRENCE COMMUNICATIONS LLC**, a Texas limited liability company, having a principal place of business at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093 and **SAINT LAWRENCE COMMUNICATIONS GMBH**, a German limited liability company, having its place of business at Pettenkoferstraße 4, 80336 Munich, Germany (collectively "Licensor"), of the one part; and **LG Electronics, Inc.**, a South Korean company having a principal place of business at LG Twin Towers, 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea 150-721 ("Licensee"), of the other part.

### RECITALS

**WHEREAS** Licensor owns or has the right to grant licenses in the Territory to the Licensed Patents (as hereinafter defined);

**WHEREAS** Saint Lawrence Communications GmbH has filed a patent infringement law suit against LG Electronics Deutschland GmbH in the German Regional Court Munich I (*Landgericht München I*), said law suit subsequently having been separated into six distinct actions associated with docket nos. 21 O 18339/14, 21 O 814/15, 21 O 815/15, 21 O 816/15, 21 O 817/15, 21 O 818/15 by that court (the "German Litigations"), asserting the infringement of the German national parts of EP1125276, EP1125284, EP1125285, EP1232494, EP1125286, EP1354315 (collectively "German Patents-in-Suit"), and four of the German Litigations (21 O 815/15, 21 O 816/15, 21 O 817/15, 21 O 818/15) are currently under appeal by LG Electronics Deutschland GmbH before the Higher Regional Court of Munich (*Oberlandesgericht München*) concerning interim judgements relating to the issue of security for the costs of the proceedings, these appeals are associated with the docket nos. 6 U 3275/15, 6 U 3276/15, 6 U 3277/15 and 6 U 3278/15 (the "German Appeal Litigations");

**WHEREAS** LG Electronics Deutschland GmbH has filed nullity actions against Saint Lawrence Communications GmbH in the German Federal Patent Court (*Bundespatentgericht*), docket nos. 4 Ni 5/15, 4 Ni 6/15, 4 Ni 14/15, 4 Ni 15/15, (the "German Nullity Actions"), seeking the invalidation of the German national parts of EP1125276, EP1125284, EP1125285, and EP1125286;

**WHEREAS** Saint Lawrence Communications LLC has filed a patent infringement law suit against LG Electronics, Inc., LG Electronics Alabama, Inc., and LG Electronics USA, Inc., asserting the infringement of U.S. Patent Nos. 6,795,805, 6,807,524, 7,151,802, 7,260,521 and 7,191,123 (collectively, the "US Patents-in-Suit" and jointly with the German Patents-in-Suit, the "Patents-in-Suit"), in the United States District Court for the Eastern District of Texas docket no. **2:14-cv-1055** (the "US Litigations" and jointly with the German Litigations and the German Appeal Litigations, the "Litigations");

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**WHEREAS** Licensee and its Affiliates (as hereinafter defined) desire to obtain a license in the Territory to Licensor's patents;

**WHEREAS** Licensee and Licensor seek to avoid the significant costs and expenses associated with litigation;

**WHEREAS** Licensor seeks to grant to Licensee and its Affiliates a non-exclusive, worldwide, fully paid-up license under the terms and conditions set forth hereunder; and

**WHEREAS** the Parties desire to resolve all aspects of the Litigations without the further time and expense of litigation or other legal action and provide for a full, final, and complete settlement of the subject matter of the Litigations and releases and licenses, all on the terms and conditions set forth herein.

**NOW THEREFORE**, for and in consideration of the payments made and to be made by Licensee hereunder and the other covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is covenanted and agreed by and between the Parties hereto that:

1.    **DEFINITIONS**

The following terms, whenever used herein shall unless the context otherwise requires, have the following meanings:

1.1    **"Affiliate"** with respect to Licensee means a company or other legal entity which is controlled by or is under common control with Licensee, but any such company or other legal entity shall be deemed to be an Affiliate only as long as such control exists, and for the purposes of this definition, "control" shall mean direct or indirect ownership of more than fifty percent (50%) of the voting power, capital or other securities of the controlled or commonly controlled entity.

1.2    **"Agreement"** means this AMR-WB Standard Patent License Agreement and its appendices.

1.3    **"AMR-WB Standard"** means the mandatory technical specifications within the Adaptive Multi-Rate Wideband Standard technical specifications of 3GPP that are specified in Appendix A as issued by organizational partners of the 3GPP as well as the equivalent G.722.2 Recommendation adopted by the International Telecommunication Union, as amended from time to time.

1.4    **"Codec"** means an Encoder and/or a Decoder.

1.5    **"Decoder"** means a decoder, compliant with the AMR-WB Standard, which converts a stream of compressed AMR-WB data into sampled audio data.

1.6    **"Encoder"** means an encoder, compliant with the AMR-WB Standard, which converts sampled audio data into a stream of compressed AMR-WB data.

2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1.7     **"End-User"** means any person or entity that acquires a Licensed Product and is its ultimate user, or sells to an ultimate user, whether for personal or commercial use.

1.8     **"Essential AMR-WB Patents"** means the claims of patents that, in the absence of a license, are necessarily and unavoidably infringed (on technical, but not on commercial grounds) by the practice of the AMR-WB Standard.

1.9     **"Handset"** means a wireless terminal (including but not limited to PDAs, smart phones, tablets and laptops) acquired or available to be acquired by an End-User and that is capable and/or designed to receive/transmit voice and/or data information in compliance with a mobile telephony standard, such as but not limited to, GSM, PDC, TDMA, CDMA, CDMA2000, W-CDMA, IMT-2000, TD-SCDMA or LTE.

1.10     **"Implementation"** means an intermediate Decoder and/or Encoder component or other intermediate product (such as a hardware component, software library or subassembly) which is not a complete, ready-to-use, final product acquired or available to be acquired by an End-User.

1.11     **"Settlement Fee"** means the fee referred to in Section 4.1.

1.12     **"Licensed Patents"** means the following patent rights Licensor owns or controls or has the right to license currently or in the future within the Territory: (i) all patents or patent applications anywhere in the world including but not limited to the patents and patent applications listed in Appendix B, and (ii) to the extent currently or in the future owned or controlled or licensable by Licensor in the Territory, divisionals, continuations, continuations-in-part, reissues, reexaminations, utility models, parent, foreign counterparts, or extension of any patents and patent applications listed in Appendix B.

1.13     **"Licensed Product(s)"** means any service or product, but only to the extent that such service or product complies with the AMR-WB Standard, Sold by Licensee and/or its Affiliates (including but not limited to Handsets and consumer electronics) which is to be acquired or available to be acquired by a downstream customer, including, but not limited to an End-User, that is (i) designed and/or branded by Licensee or its Affiliates or branded by a downstream customer, or (ii) made, manufactured, used, sold, offered for sale, leased, purchased, licensed, imported, have imported, exported, have exported, supplied, distributed and/or otherwise disposed of by or on behalf of/for Licensee and/or its Affiliates. For clarity, Licensed Products shall remain Licensed Products when sold by Licensee and/or its Affiliates to its customers in the ordinary course of business.

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY     LG-SLC-NY_00349202

1.14 **"LG Products"** means any service or product (including any technology or component within such product) commercially available to an End-User as of the Effective Date and any upgrades, enhancements and natural evolutions thereof now or hereafter made, have made, manufactured, used, sold, offered for sale, leased, purchased, licensed, imported, have imported, exported, have exported, supplied, distributed and/or otherwise disposed of by or on behalf of Licensee and/or its Affiliates.

1.15 **"Licensee"** means LG Electronics, Inc. and its Affiliates.

1.16 **"Licensor"** means Saint Lawrence Communications LLC and Saint Lawrence Communications GmbH.

1.17 A **"Party"** to this Agreement means Licensor or Licensee, as the case may be, and **"Parties"** shall be construed accordingly.

1.18 **"Sell, Sale (Sold)"** means sale, rent, lease, license or other form of distribution of a Licensed Product to an End-User, distributor, or any other person or entity, either directly or through a chain of distribution, for financial consideration or otherwise, or for use of a Licensed Product for commercial purposes. Notwithstanding the foregoing, a "Sale" of a Licensed Product shall include a Sale outside the Territory, where said Licensed Product is intended to be first acquired by an End User in the Territory.

1.19 **"Term"** means the term described in Section 5 of this Agreement.

1.20 **"Territory"** means those countries of the world in which any of the Licensed Patents are in force or will be in force when granted, or those countries where Licensor can assert the Licensed Patents.

1.21 **"VoIP Application(s)"** means a complete or substantially complete ready-to-use software product that complies with the AMR-WB Standard because it contains a Decoder and/or an Encoder to be used for delivery of voice communications over IP networks, including the internet or other packet-switched networks.

## 2. GRANT OF LICENSE; MUTUAL RELEASES; DISMISSAL AND COSTS

2.1 Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee and its Affiliates, a limited, non-transferable, fully paid-up and non-exclusive license during the Term, within the Territory to use, make, have made in accordance with Section 3.3, import, distribute, offer for sale, Sell, Sale (Sold), develop, advertise, support, update, maintain, or otherwise dispose of Licensed Products, under the Licensed Patents, for the purpose of encoding and/or decoding data in accordance with the AMR-WB Standard. The license granted herein specifically excludes any rights under the Licensed Patents to practice any standard other than the AMR-WB Standard.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349203

This license also includes any Implementations, Codecs, Decoders, Encoders and VoIP Applications integrated into and installed on a Licensed Product and thereafter Sold by Licensee or its Affiliates. Licensee and its Affiliates are further entitled to download, offer for download or permit third parties to download updates or upgrades to Implementations, Codecs, Decoders, Encoders or VoIP Applications integrated into and installed on a Licensed Product by Licensee or its Affiliates.

2.2     Licensor Releases to Licensee. Except with respect to the obligations created by or arising out of this Agreement, Licensor does hereby for itself and its respective legal successors, heirs and assigns, release and absolutely discharge Licensee and its current Affiliates, and each of its current and former customers, suppliers, manufacturers, employees, representatives, agents, officers, directors, parents, subsidiaries, past and present, of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, actions and causes of action of every kind and nature whatever arising prior to the Effective Date under the Licensed Patents.   The releases granted under this Section 2.2 are limited to the Licensed Patents and do not extend to patents other than the Licensed Patents.

2.3     Licensee Releases to Licensor.  Except with respect to the obligations created by or arising out of this Agreement, Licensee and its current Affiliates, their respective legal successors, heirs and assigns, release and absolutely discharge Licensor, and each of its current and former employees, representatives, agents, officers, directors, parents, subsidiaries, past and present, of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, actions and causes of action of every kind and nature whatever, arising prior to the Effective Date and arising out of or in connection with the Licensed Patents, Licensor's licensing efforts of the Licensed Patents or Licensor's enforcement of the Licensed Patents under the AMR-WB Standard.

2.4     Unknown Claims.   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the dispute between them with respect to the AMR-WB Standard involving the Licensed Patents in the Territory that are unknown, unanticipated or unsuspected or that may hereafter arise as a result of the discovery of new and/or additional facts.   The Parties further acknowledge and understand the significance and potential consequences of its release of unknown claims.  The Parties intend that the claims released in the Territory under this Agreement be construed as broadly as possible and agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction.   Section 1542 reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT

5

LG-SLC-NY_00349204

KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

2.5   Dismissal and Costs. Within five (5) business days after the Effective Date of this
Agreement, Saint Lawrence Communications GmbH shall withdraw each and all
of the Complaints filed in the German Litigations against LG Electronics
Deutschland GmbH.  In the withdrawal requests and withdrawal motions, Saint
Lawrence Communications GmbH and LG Electronics Deutschland GmbH shall
be entitled to refer to this Agreement as the reason for withdrawal. Saint
Lawrence Communications GmbH shall waive its right to file a motion for
compensation of costs against LG Electronics Deutschland GmbH with respect to
any and all of the German Litigations and German Appeal Litigations. Licensee
shall warrant that LG Electronics Deutschland GmbH consent to such
withdrawals and waive its right to file a motion for compensation of costs with
respect to any and all of the German Litigations and German Appeal Litigations.
Saint Lawrence Communications GmbH shall provide Licensee with a copy of
the withdrawal motions within five (5) business days after the filing of these
withdrawal motions.  For the purposes of this first paragraph of Section 2.5,
"Complaints" shall mean the complaints initially filed as one but then separated in
the German Litigations.

Licensee shall warrant that LG Electronics Deutschland GmbH withdraw, within
five (5) business days after the Effective Date of this Agreement, each and all of
the Complaints filed in the German Nullity Actions against Saint Lawrence
Communications GmbH. In the withdrawal motions, LG Electronics Deutschland
GmbH shall be entitled to refer to this Agreement as the reason for withdrawal.
Licensee shall warrant that LG Electronics Deutschland GmbH waive its (the
latter's) right to file a motion for compensation of costs against Saint Lawrence
Communications GmbH with respect to any and all of the German Nullity
Actions. Saint Lawrence Communications GmbH shall consent to such
withdrawals and waives its right to file a motion for compensation of costs with
respect to any and all of the German Nullity Actions. Licensee shall warrant that
LG Electronics Deutschland GmbH provide Saint Lawrence Communications
GmbH with a copy of the withdrawal motions within five (5) business days after
the filing of these withdrawal motions. For the purposes of this second paragraph
of Section 2.5, "Complaints" shall mean the complaints filed in the German
Nullity Actions.

Each party and Saint Lawrence Communications GmbH and LG Electronics
Deutschland GmbH bears all of their own legal fees and costs. Licensor shall,
upon Licensee's or LG Electronics Deutschland GmbH's request, provide
declarations and/or provide support and assistance necessary for the release of any

6

LG-SLC-NY_00349205

deposit made by Licensee or LG Electronics Deutschland GmbH in connection with the German Litigations.

2.6    Within five (5) days of the Effective Date of this Agreement, the Parties shall jointly file a stipulation of dismissal requesting that the United States District Court for the Eastern District of Texas dismiss with prejudice all claims and counterclaims between the Parties in the US Litigations, each Party to bear its own costs.

2.7    Within five (5) days of the Effective Date of this Agreement, Licensee agrees to cease any prosecution and maintenance of the IPRs other than to provide any documentation explicitly requested by the Patent Trial and Appeal Board. Licensee agrees to not oppose Licensor in seeking leave for filing a joint motion to terminate any of IPRs and will join motions to terminate the IPRs once leave to file such motions has been granted.

2.8    Covenant. Licensor, on behalf of itself, its subsidiaries, and their successors and assigns, hereby covenants not to sue Licensee, its Affiliates, their successors and assigns, direct or indirect customers, users, licensees, service providers, distributors, retailers, or direct and indirect suppliers for infringement of any patents owned or controlled or licensable by Licensor during the Term of this Agreement ("Covenant Patents") solely with respect to LG Products for the life of such patents.

2.9    The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of any liability, misconduct, responsibility whatsoever, and that Licensor on the one hand, and Licensee on the other, expressly deny any liability to the other Party. Each Party shall bear its own costs and attorney's fees in connection with this Agreement.

## 3.    LIMITATIONS TO LICENSES

3.1    Except as set out in Section 10 of this Agreement, Licensee shall not be entitled to assign or otherwise transfer any of its rights under this Agreement. Licensee shall not be entitled to sublicense its rights under this Agreement.

3.2    The license and other rights granted herein is subject to all restrictions and limitations set out in the present Agreement. All rights not expressly granted are hereby expressly reserved. Furthermore, nothing in this Agreement shall be construed as a right to use or Sell any Licensed Products in a manner which conveys or purports to convey whether explicitly, by principles of implied license, or otherwise, any rights to any third party or purchaser of the Licensed Products, under any patent claim of Licensor covering or relating to any combination of the

7

Licensed Products with any other product. For the avoidance of any doubt, the rights of Licensee's direct and indirect customers, distributors, or End-Users shall not extend beyond those rights that are exhausted by the Licensed Product being put on the market in consistency with the terms and conditions of this Agreement or any rights expressly granted under this Agreement. The Parties explicitly clarify that any Licensed Products Sold in accordance with this Agreement may be used by direct or indirect customers, distributers, or End-Users during and after the Term of this Agreement, solely in accordance with the terms and conditions set forth in this Agreement, including without limitation, the license and releases granted above.

3.3    If any Licensed Products are made by a third party for Licensee or its Affiliates under Licensee's or its Affiliates' have-made rights in accordance with Licensee's or its Affiliates' technical specifications, such third party shall Sell or otherwise supply such Licensed Products to Licensee or its Affiliates only if the Licensed Products shall be designed by or for the benefit of the Licensee or its Affiliates exercising its have made rights. At Licensee's or its Affiliate's instruction, such third party may ship such Licensed Products to Licensee's or its Affiliate's authorized distributor, to whom Licensee or its Affiliates has Sold such Licensed Products, or any other authorized person or entity (e.g., shipping companies).

## 4.    PAYMENTS AND ACCOUNTING

4.1    **Amount of Payment.**  Licensee shall pay to Saint Lawrence Communications LLC ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Settlement Fee is non-refundable.

4.2    **Timing of Payment.**  Licensee shall pay Saint Lawrence Communications LLC the Settlement Fee in two equal installments of ▓▓▓▓▓▓▓ each, totaling US ▓▓▓▓▓▓ payable as follows:

   4.2.1    ▓▓▓▓▓▓▓ within sixty (60) calendar days from the Effective Date, but no later than March 2nd, 2016; and

   4.2.2    ▓▓▓▓▓▓▓ within one hundred twenty (120) calendar days from the Effective Date, but no later than June 2nd, 2016.

   4.2.3    Licensor shall provide Licensee with a first invoice no later than thirty (30) days prior to March 2nd, 2016 and a second invoice no later than thirty (30) days prior to June 2nd, 2016.

8

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349207

4.3 **Method of Payment.** The Settlement Fee will be made by wire transfer in U.S. dollars and in immediately available funds. The wire transfer payments shall be sent to the following bank:

| | |
|---|---|
| Bank Name: | Comerica Bank |
| Branch Name | |
| Bank Address: | 8422 Dallas Parkway |
| | Frisco, Texas 75034 USA |
| Routing Number: | 111000753 |
| Beneficiary Account Name: | Saint Lawrence Communications LLC |
| Beneficiary Account Number: | 1881695470 |
| For International Wires: | COMERICA   SWIFT   CODE: |
| MNBDUS33 | |

4.4 All taxes shall be the financial responsibility of the Party obligated to pay such taxes as determined by the applicable law and neither Party is or shall be liable at any time for any of the other Party's taxes incurred in connection with or related to amounts paid under this Agreement. For the avoidance of doubt, Licensor will be responsible for any taxes to which it is subject as a result of the payment of the Settlement Fee made by Licensee to Licensor under this Agreement. If any withholding tax is imposed under the laws of a country or other taxing jurisdiction outside of the United States ("Withholding Tax") on the amount payable by Licensee to Licensor under this Section, Licensee will use its reasonable best efforts to avoid or mitigate the Withholding Tax liability, if possible including without limitation seeking confirmation from the Korean tax authority that withholding is not required for payments associated with non-Korean patent rights. Licensor shall timely provide Licensee with its residency certificate and/or complete such other tax forms that are necessary for Licensee to avoid or mitigate such Withholding Tax liability. To the extent that any Withholding Tax is nevertheless required by law, Licensee shall pay to Licensor the amount due under this Agreement minus any Withholding Tax and shall provide Licensor with such official tax certificates, receipts and other appropriate documentation evidencing payment of the Withholding Tax. Licensee agrees to take reasonable efforts to assist Licensor in any requests to the Korean tax authority seeking to mitigate the Withholding Tax.

## 5.  TERM

5.1 This Agreement shall not be binding on the Parties until it has been signed below by both Parties, at which time it shall be deemed effective as of its Effective Date. Subject to Sections 6.1 and 6.2 below, the licenses and covenants granted under this Agreement are effective as of the Effective Date and continue in full force until the expiration of the last surviving Licensed Patent.

9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

6.    **TERMINATION**

6.1    Licensor may, without prejudice to any and all rights and remedies available to Licensor under this Agreement and at law, terminate this Agreement by thirty (30) days written notice to the Licensee upon Licensee's failure to pay the Settlement Fee as set forth in Article 4.

In the event Licensor terminates this Agreement under Section 6.1, the licenses, covenants, and releases under this Agreement shall terminate, and Licensee and its Affiliates shall have no further right to exploit the Licensed Patents.

6.2    Once Licensee has paid the Settlement Fee in full, Licensor shall lose all rights to terminate this Agreement. For the avoidance of doubt, once Licensee has paid the Settlement Fee in full, all licenses, covenants, releases, and other rights granted to Licensee in this Agreement become irrevocable and non-terminable.

6.3    The following provisions of this Agreement shall survive any termination of this Agreement: Article 1, section 6.3, Article 8, Article 9, Article 11, and Article 12. Further, once full payment of both installments of the Settlement Fee in accordance with Sections 4.1 and 4.2 above has occurred, the following provisions of this Agreement shall also survive any termination of this Agreement: section 2.2, section 2.3, section 2.4, section 6.2, and Article 10.

7.    **WARRANTIES AND INDEMNIFICATION**

7.1    Each Party represents, covenants and warrants that it has the authority and right to convey the rights or accept the obligations created hereunder.

7.2    Licensor represents and warrants that (i) Licensor is the owner with all right, title and interest in and to enforcement of the Licensed Patents, (ii) Licensor has all rights necessary to grant any and all rights granted to Licensee under this Agreement including without limitation the licenses and releases granted in Section 2, (iii) no other third party owns any right to enforce or recover for infringement of the Licensed Patents by Licensee at any time; and (iv) it has not granted and will not grant any licenses or other rights, under the Licensed Patents, that would conflict with or prevent the licenses, releases and rights granted to Licensee hereunder. Licensor further represents and warrants that there are no liens, conveyances, mortgages, assignments, encumbrances, or other agreements that would prevent or impair the full and complete exercise of the terms of this Agreement. Licensor shall not grant or assign any rights under the Licensed Patents, unless such grants or assignments are made subject to the rights granted in this Agreement.

10

LG-SLC-NY_00349209

7.3   LICENSOR MAKES NO REPRESENTATION NOR WARRANTY WHATSOEVER THAT THE LICENSED PATENTS LICENSED HEREUNDER INCLUDE ALL INTELLECTUAL PROPERTY RIGHTS THROUGHOUT THE WORLD NECESSARY TO COMPLY WITH THE AMR-WB STANDARD OR THAT THE MAKING, USING OR SELLING OF LICENSED PRODUCTS OR PROVIDING SERVICES COVERED BY THE CLAIMS OF THE LICENSED PATENTS LICENSED HEREUNDER WILL NOT USE OR INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT UNDER THE LAWS OF ANY COUNTRY, ANY PATENT, COPYRIGHT OR OTHER INTELLECTUAL PROPERTY RIGHT OWNED BY ANY ENTITY.

7.4   Each Party further represents and warrants that in executing this Agreement, it does not rely on any promises, inducements or representations made by any person, whether a Party to this Agreement or otherwise with respect to this Agreement or any other business dealing with any person whether or not a Party to this Agreement, now or in the future.

7.5   Nothing contained in this Agreement shall be construed as a warranty or representation by Licensor as to the validity or scope of any Licensed Patents. Furthermore, nothing in this Agreement shall be construed as an obligation by Licensor to maintain any one or more of such Licensed Patents in force.

7.6   THE LICENSED PATENTS ARE LICENSED "AS IS" AND ANY AND ALL OTHER WARRANTIES OR CONDITIONS OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING THOSE OF MERCHANTABILITY, NON-INFRINGEMENT AND/OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED.

7.7   IN NO EVENT SHALL A PARTY BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, FOR BUSINESS INTERRUPTION, FOR FAILURE TO MEET ANY DUTY OF GOOD FAITH OR OF REASONABLE CARE, FOR NEGLIGENCE, OR FOR ANY OTHER PECUNIARY LOSS OR OTHER LOSS WHATSOEVER) ARISING OUT OF OR IN ANY WAY RELATED TO THE USE OF OR INABILITY TO USE THE LICENSED PATENTS OR OTHERWISE UNDER OR IN CONNECTION WITH ANY PROVISION OF THIS AGREEMENT EVEN IF A REPRESENTATIVE OF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY THEREOF. FOR THE PURPOSE OF CLARITY, NOTHING IN THIS SECTION 7.7 DIMINISHES OR OTHERWISE EXCUSES LICENSEE'S OBLIGATION TO PAY THE SETTLEMENT FEE.

11

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

7.8     THE LICENSE SET FORTH ABOVE IN SECTION 2.1 IS ONLY APPLICABLE TO THE LICENSED PATENTS WITH RESPECT TO THE AMR-WB STANDARD AND LICENSEE ACKNOWLEDGES THAT ADDITIONAL FEES MAY BE REQUIRED TO BE PAID TO ANOTHER PARTY TO LICENSE OTHER PATENTS RELATED OR ESSENTIAL TO THE AMR-WB STANDARD.

7.9     THE PARTIES AGREE THAT THIS LICENSE HAS BEEN VOLUNTARILY AND MUTUALLY AGREED UPON AFTER INTENSIVE NEGOTIATIONS AND ON THE BASIS OF THE PARTY'S UNDERSTANDING, THE PARTIES AGREED TO NEGOTIATE AND ENTER INTO THIS AGREEMENT WITHOUT SUBMITTING THE DETERMINATION OF LICENSE TERMS TO A COURT OR OTHER TRIBUNAL.

7.10    THE TERMS OF THIS SECTION 7 SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EVEN IF THIS AGREEMENT OR ANY REMEDY FAILS ITS ESSENTIAL PURPOSE.

7.11    Nothing contained in this Agreement shall be construed as conferring by implication or otherwise upon either Party hereunder any license or right except the licenses and rights expressly granted hereunder to a Party hereto.

## 8.    CONFIDENTIALITY

8.1     Except to the extent necessary to enforce the terms of this Agreement, each Party will hold the terms, but not the existence, of this Agreement in confidence and shall not publicize or disclose it in any manner whatsoever.  Notwithstanding the foregoing, the Parties may disclose this Agreement as required by applicable law, in confidence to a Court or Tribunal (or otherwise as directed by law), and to the Parties' respective attorneys, accountants, auditors, tax preparers, financial advisors and other agents who have a need to know the content of this Agreement; and Licensee may disclose the scope of the licenses and releases granted in Section 2 to a third party to the extent that Licensee reasonably believes necessary to respond to an inquiry from such third party as to whether products are licensed and/or released and therefore not subject to a claim of infringement. Furthermore, the Parties hereby agree that Licensor's ultimate parent entity, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may publicly disclose the fact that Licensor has granted a license to Licensee, without disclosing the terms thereof, in the form of a required regulatory filing, including an 8-K. Licensee may disclose the signing of this Agreement, without disclosing the terms thereof, in the form of an 8-K.

## 9.    NOTICES

12

                                   LG-SLC-NY_00349211

9.1   Any notice or other communication to be given hereunder by any Party to the other Party shall be in writing and delivered by personal delivery, nationally recognized overnight courier, or by certified or registered mail, postage prepaid, return receipt requested. Notice shall be deemed communicated on receipt in case of personal delivery, upon the earlier of (i) receipt or (ii) five (5) business days from dispatch in the case of overnight courier, and ten (10) business days after mailing in the case of mailed notice. All such notices or other communications shall be addressed as set forth below. Either Party may change its address by notice or other communication given in accordance with the provisions of this paragraph, but such change of address shall be effective only upon receipt.

| | |
|---|---|
| **Licensor:** | **SAINT LAWRENCE COMMUNICATIONS LLC** |
| | 2400 Dallas Parkway, Suite 200 |
| | Plano, Texas 75093 USA |
| | -AND- |
| | **SAINT LAWRENCE COMMUNICATIONS GMBH** |
| | Pettenkoferstraße 4 |
| | 80336 Munich, Germany |
| **Licensee:** | **LG ELECTRONICS, INC.** |
| | Head of the IP Center |
| | 19, Yangjae-daero 11gil, |
| | Seocho-gu, Seoul, 137-130, Korea |
| | -AND- |
| | **FISH & RICHARDSON P.C.** |
| | Michael McKeon (or Managing Partner) |
| | 1425 K St., N.W. 11th Floor |
| | Washington, D.C. 20005 |

## 10.   ASSIGNABILITY

10.1   Neither Licensee nor any of its Affiliates shall assign this Agreement or any right hereunder, either in whole or in part, by operation of law or otherwise, without the prior written consent of Licensor. Notwithstanding the foregoing, Licensee may assign this entire Agreement to an unrelated third-party in connection with (a) a merger with, (b) an acquisition of Licensee by or (c) a sale of Licensee's entire business to a third party acquirer; provided that in each of (a), (b) or (c) above, the licenses, releases and covenants granted herein do not extend (i) beyond the then-existing business scope of the Licensee entity involved in the acquisition, sale or merger, or (ii) to any products of the unrelated third-party. Licensee agrees and

13

LG-SLC-NY_00349212

acknowledges that any assignment in violation of this Section 10.1 shall be void *ab initio.*

10.2   Licensor shall not assign, exclusively license, or transfer any Licensed Patents or Covenant Patents owned or controlled by it at any time to a third party unless such third party agrees in writing that any encumbrances upon such Licensed Patents or Covenant Patents created by this Agreement shall be binding upon such third party and its successors, heirs and assigns.   Licensor shall impose on any such third party the obligation to impose the obligations under this paragraph 10.2 on the immediate successors-in-interest or assigns with respect to the Licensed Patents.

## 11.   CHOICE OF LAW AND DISPUTE RESOLUTION

11.1   This Agreement shall be governed by, interpreted and construed in accordance with the laws of New York, without reference to conflicts of laws principles.   Any legal action or other legal proceeding relating to the interpretation or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a federal or state court in New York. Each Party expressly and irrevocably consents and submits to the jurisdiction of such state and federal courts in connection with any such legal proceeding.

## 12.   MISCELLANEOUS

12.1   In the event that any provision of this Agreement shall be unenforceable or invalid under any applicable law or be so held by applicable court decision, such unenforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole, and the unenforceable or invalid provision shall be amended to achieve as closely as possible the spirit of the original provision.

12.2   Nothing in this Agreement shall be construed as obligating Licensee to manufacture or sell any particular Licensed Product hereunder.

12.3   Subject to Section 10, this Agreement shall inure to the benefit of and bind the successors and assigns of the Parties hereto.

12.4   Words importing the singular shall include the plural and *vice versa.*

12.5   The Parties hereto are independent contractors, and nothing herein shall be construed as creating a joint venture, partnership, franchise or other agency between the Parties.

12.6   The Appendices form part of this Agreement and will have full force and effect as if expressly set out in the body of the Agreement.

14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
LG-SLC-NY_00349213

12.7 This Agreement and its Appendices constitute the entire agreement between the Parties, and supersedes all prior written and oral agreements with respect to the subject matter hereof.

12.8 This Agreement may not be amended except by a written agreement of the Parties.

12.9 If any Party is prevented from performing any portion of the Agreement (except the payment of money) by causes beyond its control, including labor disputes, civil commotion, war, casualty, inability to obtain materials or services or acts of God, such defaulting Party will be excused from performance for the period of the delay and for a reasonable time thereafter.

12.10 The Parties hereto have requested that this Agreement be drafted in English.

12.11 This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. An executed facsimile or scanned copy shall have the same force and effect as an executed original.

12.12 No term or provision hereof shall be deemed waived and no breach excused, unless such waiver or consent is given in writing and signed by the Party claimed to have waived or consented. Any consent by either Party to, or waiver of, a breach by the other Party, whether express or implied, shall not constitute consent to, waiver of, or excuse for any other different or subsequent breach.

*(Signatures on the next page)*

15

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349214

12.13   No delay on the part of the Licensor or Licensee in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of the Licensor or Licensee of any right, power or privilege hereunder, nor any single or partial exercise of any right, power or privilege hereunder, preclude any other exercise thereof hereunder.

**EXECUTED on this** _____ **day of** _____ **, 20**_____.

**Licensor:**
**SAINT LAWRENCE COMMUNICATIONS LLC**

Signature: _____

Name: _____

Title: _____

**SAINT LAWRENCE COMMUNICATIONS GmbH**

Signature: _____

Name: _____

Title: _____

**EXECUTED on this** _31_ **day of** _____DEC_____ **, 20**_15_.

**Licensee:**
_____LG Electronics_
Signature: _~~~~~~_

Name: _SAENG GYU, JEON_

Title: _Senior Vice president._

16

LG-SLC-NY_00349215

12.13 No delay on the part of the Licensor or Licensee in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of the Licensor or Licensee of any right, power or privilege hereunder, nor any single or partial exercise of any right, power or privilege hereunder, preclude any other exercise thereof hereunder.

**EXECUTED on this** 31⁵ᵗ **day of** December **, 20** 15 **.**

**Licensor:**
**SAINT LAWRENCE COMMUNICATIONS LLC**

Signature: _____

Name: _____ Marvin E Key _____

Title: _____ CEO _____

**SAINT LAWRENCE COMMUNICATIONS GmbH**

Signature: _____

Name: _ Frank Beel _

Title: _ MD _

**EXECUTED on this _____ day of _____ , 20 ____ .**

**Licensee:**
_____

Signature: _____

Name: _____

Title: _____

16

Approved as to form: _____
Darren Miller

# APPENDIX A

## TECHNICAL SPECIFICATIONS OF THE AMR WIDEBAND STANDARD

| | |
|---|---|
| TS 26.171 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; General description |
| TS 26.173 | ANSI-C code for the Adaptive Multi-Rate - Wideband (AMR-WB) speech codec |
| TS 26.190 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; Transcoding functions |
| TS 26.191 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; Error concealment of erroneous or lost frames |
| TS 26.192 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; Comfort noise aspects |
| TS 26.193 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; Source controlled rate operation |
| TS 26.194 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; Voice Activity Detector (VAD) |
| TS 26.204 | Speech codec speech processing functions; Adaptive Multi-Rate - Wideband (AMR-WB) speech codec; ANSI-C code |

17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349217

## APPENDIX B

## AMR-WB PATENT PORTFOLIO

**LICENSED PATENTS**

| Country | Patent # | Issue Date | Title |
|---------|----------|------------|-------|
| United States | 6807524 | 10/19/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| United Kingdom | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Switzerland | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Sweden | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Spain | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| South Korea | 417634 | 1/26/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| South Africa | 2001/3366 | 7/31/2002 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Russia | 2219507 | 12/20/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Portugal | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Norway | 317603 | 11/22/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| New Zealand | 511163 | 11/3/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Netherlands | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Monaco | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |

18

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | | |
|---|---|---|---|
| Mexico | 232817 | 12/9/2005 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Malaysia | 125998 | 9/29/2006 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Luxembourg | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Liechtenstein | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Japan | 3566652 | 6/18/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Italy | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Ireland | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| India | 207717 | 6/21/2007 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Hong Kong | 1043234 | 7/16/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Greece | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Germany | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| France | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Finland | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Denmark | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Cyprus | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| China | 99813602.6 | 11/5/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349219

| | | | |
|---|---|---|---|
| | | | WIDEBAND SIGNALS |
| Canada | 2347668 | 2/14/2006 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Brazil | PI9914889-7 | 7/30/2013 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Belgium | 1125286 | 12/17/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Austria | 256910 | 1/15/2004 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| Australia | 752229 | 1/16/2003 | PERCEPTUAL WEIGHTING DEVICE AND METHOD FOR EFFICIENT CODING OF WIDEBAND SIGNALS |
| United States | 7260521 | 8/21/2007 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| United States | 7672837 | 3/2/2010 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| United States | 8036885 | 10/11/2011 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| United Kingdom | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Switzerland | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Sweden | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Spain | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| South Korea | 417635 | 1/26/2004 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| South Africa | 2001/3367 | 7/31/2002 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Russia | 2217718 | 11/27/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |

20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349220

| Portugal | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
|---|---|---|---|
| Norway | 319181 | 6/27/2005 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Netherlands | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Monaco | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Mexico | 235040 | 3/17/2006 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Malaysia | 129200 | 3/30/2007 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Luxembourg | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Liechtenstein | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Japan | 3490685 | 11/7/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Italy | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Ireland | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| India | 199434 | 6/30/2006 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Greece | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Germany | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| France | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Finland | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING |

21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349221

| | | | WIDEBAND SIGNALS |
|---|---|---|---|
| Denmark | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Cyprus | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| China | 99813601.8 | 10/20/2004 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Canada | 2347743 | 9/27/2005 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Brazil | PI9914890-0 | 9/24/2013 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Belgium | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Austria | 1125276 | 8/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| Australia | 763471 | 11/6/2003 | METHOD AND DEVICE FOR ADAPTIVE BANDWIDTH PITCH SEARCH IN CODING WIDEBAND SIGNALS |
| United States | 6795805 | 9/21/2004 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| United Kingdom | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Switzerland | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Sweden | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Spain | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Portugal | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Netherlands | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Monaco | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Luxembourg | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Liechtenstein | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349222

| Japan | 3869211 | 10/20/2006 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
|---|---|---|---|
| Italy | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Ireland | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Greece | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Germany | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| France | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Finland | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Denmark | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Cyprus | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| China | 99813641.7 | 9/8/2004 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Canada | 2347667 | 2/14/2006 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Belgium | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| Austria | 1125285 | 7/30/2003 | PERIODICITY ENHANCEMENT IN DECODING WIDEBAND SIGNALS |
| United States | 7151802 | 12/19/2006 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| United Kingdom | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Switzerland | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Sweden | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Spain | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| South Korea | 417836 | 1/27/2004 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Portugal | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |

23

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349223

| | | | |
|---|---|---|---|
| Norway | 318627 | 4/18/2005 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Netherlands | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Monaco | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Luxembourg | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Liechtenstein | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Japan | 3936139 | 3/30/2007 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Italy | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Ireland | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Greece | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Germany | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| France | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Finland | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Denmark | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Cyprus | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| China | 99813640.9 | 9/8/2004 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Canada | 2347735 | 1/8/2008 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED |

24

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349224

| | | | |
|---|---|---|---|
| | | | SYNTHESIZED WIDEBAND SIGNAL |
| Belgium | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| Austria | 1125284 | 8/6/2003 | HIGH FREQUENCY CONTENT RECOVERING METHOD AND DEVICE FOR OVER-SAMPLED SYNTHESIZED WIDEBAND SIGNAL |
| United States | 7191123 | 3/13/2007 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| United Kingdom | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Switzerland | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Sweden | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Spain | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Portugal | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Netherlands | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Monaco | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Luxembourg | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Liechtenstein | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Japan | 4662673 | 1/14/2011 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Italy | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Ireland | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Greece | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Germany | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| France | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Finland | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Denmark | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Cyprus | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349225

| China | 815854.1 | 11/30/2005 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
|---|---|---|---|
| Canada | 2391562 | 5/16/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Belgium | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| Austria | 1232494 | 8/9/2006 | GAIN-SMOOTHING IN WIDEBAND SPEECH AND AUDIO SIGNAL DECODER |
| United States | 7280959 | 10/9/2007 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| United Kingdom | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Switzerland | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Sweden | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Spain | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Portugal | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Netherlands | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Liechtenstein | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Japan | 4064236 | 1/11/2008 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Italy | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| India | 216072 | 3/6/2008 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Greece | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Germany | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |

26

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349226

| France | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Finland | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Denmark | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| China | 1803954.5 | 6/8/2005 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Canada | 2423651 | 7/7/2009 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Belgium | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |
| Austria | 1354315 | 6/14/2006 | INDEXING PULSE POSITIONS AND SIGNS IN ALGEBRAIC CODEBOOKS FOR CODING OF WIDEBAND SIGNALS |

27

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

LG-SLC-NY_00349227